UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK_____

VICTOR M. HERRERA,

                                      **AMENDED**

                      **Plaintiff,**                      **CIVIL ACTION**

      against                              **VERIFIED COMPLAINT**

                                            **JURY TRIAL AS TO ALL CLAIMS**

**STEVEN BANKS**, Commissioner; **IRIS RODRIGUEZ**,
Deputy Commissioner; **JASON HANSMAN**, Special
Assistant to the Deputy Commissioner; **FRANTZ DUPUY**,
Program Administrator; **City of New York Department**        **17-CV-7691(ALC)(KHP)**
**of Homeless Services**; **SERGEANT ROSA, HRA Police**, HRA Police
**OFFICER WALLER, JANE DOE Human Resource Employee, ROBERTO**
**MERCADO**, Manager, **Human Resource Administration;**
**COMMISSIONER, HOUSING DEVELOPMENT CORPORATION;**
**DEPARTMENT OF HEALTH AND MENTAL HYGIENE;**
**CITY OF NEW YORK**, **CHRISTOPHER WINTERMUTE, MARGARET BAUERT,**
**DAVID MILLER & ERIC STOVALL**, Police Officers,
New York Police Department, City of New York; **Commissioner**
**Fire Department EMS,** City of New York;
**ACACIA NETWORK, SHANELLA MOORE, SHANA ORDONEZ, ACACIA**
**NETWORK EMPLOYEES, S.E.R.A. SECURITY, SECURITY**
**OFFICER STONE, JOHN DOE S.E.R.A. SECURITY OFFICERS**
**TAVIA THOMAS**, Supervisor; **DA'WUD LEE,** Program Director,
**WAYNE JORDAN,** Director Operations, **MICHAEL CHAVEZ**,
Resident Aide; **SAMARITAN-DAYTOP VILLAGE,**
**FJC SECURITY OFFICER SMITH, Allied Universal Security.**
**BREAKING GROUND PROPERTY MANAGEMENT PROGRAM, 250**
**ASHLAND PLACE; VANESSA CUCORULLO,** Breaking Ground **250 Ashland**
**Place Leasing Manager**

                              **Defendants.**
_____


**INTRODUCTION**

**VICTOR M. HERRERA,** a resident and citizen of the United States and the State of New York hereby
asserts the following claims against the defendants in the above-entitled action:

1. Violation of 42 USC §1983 False Arrest
2. Violation of 42 USC §1983 Unlawful detention and confinement
3. Violation of 42 USC §1983 Retaliation and Conspiracy
4. Violation of 42 USC §1983 Deliberate Indifference
5. Violation of 42 USC §1983 Cruel and Unusual Punishment
6. Violation of 42 USC §1983 Malicious Abuse of Process
7. Malicious Prosecution
8. Discrimination and Denial of Equal Protection

9. Intentional infliction of emotional distress
10. Assault and Battery
11. Unreasonable search and seizure
12. Reserved for Negligence (until 6 months after presentment), and
13. Reserved for negligent infliction of emotional distress (until 6 months after presentment)

**JURISDICTION**

1. Jurisdiction of this Court arises under 28 USC §§1331, 1337, 1343(a), and 1367(a); 42 USC §1983, 1985 and 1988; and 18 USC §1961-1968.

2. Jurisdiction of this Court for the pendent claims is authorized by Fed.R.Civ.Proc §18(a), and arises under the doctrine of pendent jurisdiction as set forth in **United Mine Workers v. Gibbs,** 383 US 715 (1966)

**PARTIES**

3. Plaintiff **Victor M. Herrera** is a natural person with a mailing address of 31-67 49th Street, Apt 5D, Woodside, New York 11377, county of Queens, State of New York, United States of America, and is a resident of the State of New York during all relative times of this action.

4. Defendant **Steven Banks** is the Commissioner of the **Department of Homeless Services and Human Resource Administration** located at 33 Beaver Street, New York, NY 10004, **City of New York** appointed by the Defendant **City of New York** at all times material to the complaint, and was acting in his official capacity at all times relevant to this complaint.

5. Defendant **Iris Rodriguez** is the Deputy Commissioner of the **Department of Homeless Services** located at 33 Beaver Street, New York, NY 10004, appointed by the defendant(s) **City of New York** at all times material to the complaint, and was acting in her official capacity at all times relevant to this complaint.

6. Defendant **Jason Hansman** is a Special Assistant to the Deputy Commissioner of the **Department of Homeless Services** located at 33 Beaver Street, New York, NY 10004, appointed by the Defendant(s) **City of New York** at all times material to the complaint, and was acting in his official capacity at all times relevant to this complaint.

7. Defendant **Frantz Dupuy** is the Program Administrator to the Deputy Commissioner **Iris Rodriguez** of the **Department of Homeless Services** located at 33 Beaver Street, New York, NY 10004, and was an employee of the defendant(s) **City of New York** at all times material to the complaint and was acting in his official capacity at all times relevant to this complaint.

8. Defendant **Housing Development Corporation** is a City run program responsible for increasing Affordable Housing for low, moderate and middle income families, and is the corporation responsible for administering and contracting the private **not-for-profit organizations** in assuring the distribution and appropriate use of such affordable housing unit under the laws of

the State of New York and City of New York and at all times material to the complaint, was the primary agency responsible for **Breaking Ground Lease Management** for 250 Ashland Place, and were acting in their official capacity at all times relevant to this complaint.

9. Defendant **Sergeant Rosa**, is a Human Resource Police Supervisor for the defendant **City of New York Human Resource Administration Commissioner Steven Banks** located at 4 World Trade (150 Greenwich Street) 40th Floor, New York, NY 10007, and at all times relevant to this complaint, was assigned to the **Human Resource Administration Building** located at 109 East 16th Street, New York, NY, and was an employee of the Defendant(s) **City of New York** at all times material to the complaint, and was acting in his official capacity at all times relevant to this complaint.

10. Defendant **Christopher Wintermute** is a Police Officer for the Defendant **City of New York** and at all times relevant to this complaint, was assigned to the **32nd Precinct** located at 250 West 135th Street, New York, NY 10030 and was at all times acting in his official capacity at all times relevant to this complaint.

11. Defendant **Margaret Bauert** is a Police Officer for the Defendant **City of New York** and at all times relevant to this complaint, was assigned to the **32nd Precinct** located at 250 West 135th Street, New York, NY 10030, and was at all times acting in her official capacity at all times relevant to this complaint.

12. Defendant **David Miller** is a Police Officer for the Defendant **City of New York** and at all times relevant to this complaint, was assigned to the **32nd Precinct** located at 250 West 135th Street, New York, NY 10030, and was at all times acting in his official capacity at all times relevant to this complaint.

13. Defendant **Eric Stovall** is a Police Officer for the Defendant **City of New York** and at all times relevant to this complaint, was assigned to the **32nd Precinct** located at 250 West 135th Street, New York, NY 10030 and at all times acting in his official capacity at all times relevant to this complaint.

14. Defendant **Police Officer Bilchetti Badge No. 3546** is a Police Officer for the Defendant **City of New York** and at all times relevant to this complaint, was assigned to the **109th Precinct** located at 37-05 Union Street, Flushing, New York 11354 and at all times acting in his official capacity at all times relevant to this complaint.

15. Defendant **Police Officer Dumeng Badge No. 10103** is a Police Officer for the Defendant **City of New York** and at all times relevant to this complaint, was assigned to the **109th Precinct** located at 37-05 Union Street, Flushing, New York 11354 and at all times acting in his official capacity at all times relevant to this complaint.

16. Defendant **Acacia Network** with their central office located at **300 East 175th Street, Bronx, NY 10457** is a private not-for-profit 501 corporation organized under the laws of the State of New York and City of New York to engage in business with the defendant **City of New York**

**Department of Homeless Services** and were at all times material to the complaint contracted with the **City of New York Department of Homeless Services** to provide services to the Homeless and vulnerable community of the City of New York, and was at all times relevant to this complaint acting under the policies and procedures of the **City of New York Department of Homeless Services**.

17. Defendant **Acacia Network Shanella Moore,** was at all times employees of Defendant **Acacia Network** assigned to **Julio's Place** located at 102-104 West 128th Street, New York, NY 10027 and were at all times relevant to the complaint acting under the policies and procedures of the defendant **City of New York Department of Homeless Services.**

18. Defendant **Acacia Network Shana Ordonez** was at all times material to this complaint employee of **Acacia Network** assigned to **Julio's Place** located at 102 West 128th Street, New York, NY 10027 and were at all times relevant to the complaint acting under the policies and procedures of the Defendant **City of New York Department of Homeless Services.**

19. Defendant **S.E.R.A. Security** with their central office located at **2804A 3rd Ave, Bronx, NY 10455** is a privately-owned security company contracted with Defendant **Acacia Network** and were at all times relevant to this complaint, providing Security Support Services to the Defendant **Acacia Network**, at all times relevant to this complaint acting under the policies and procedures of the defendant **City of New York Department of Homeless Services.**

20. Defendant **Security Officer Stone** is an employee of defendant **S.E.R.A. Security** and at all times relevant to this complaint, assigned to security detail for defendant **Acacia Network** at **Julio's Place** located at 102-104 West 127th Street, New York, NY, and at all times relevant to the complaint was acting under the policies and procedures of the Defendant **City of New York Department of Homeless Services** by nature of the service contract with **Acacia Network.**

**21.** Defendant **John Doe S.E.R.A. Security Officers** were employees of Defendant **S.E.R.A. Security** and at all times relevant to this complaint, assigned to security detail for defendant **Acacia Network** at **Julio's Place** located at 102-104 West 127th Street, New York, NY, and at all times relevant to the complaint was acting under the policies and procedures of the defendant **City of New York Department of Homeless Services** by nature of the service contract with **Acacia Network.**

**22.** Defendant **Samaritan-Daytop** is a private **not-for-profit 501** corporation organized under the laws of the **State of New York and City of New York** to engage in business with the defendant **City of New York Department of Homeless Services** and were at all times material to the complaint contracted with the **City of New York Department of Homeless** Services to provide services to the Homeless and vulnerable community of the **City of New York,** and was at all times relevant to this complaint acting under the policies and procedures of the **City of New York Department of Homeless Services.**

23. Defendant **Wayne Jordan** is the Director of Operations at **Samaritan-Daytop Forbell Men's Shelter** with their central office located at 138-02 Queens Boulevard, Briarwood, NY 11435-2647, a privately owned non-profit 501 corporation organized under the laws of the State of New York and the City of New York to engage in business with the defendant **City of New York Department of Homeless Services** and was at all times material to the complaint the Director of

Operations of **Greenpoint Annex** and was at all times acting under the policies and procedures of the defendant **City of New York Department of Homeless Services**.

24. Defendant **Da'wud Lee** is the Director of Programs at **Samaritan-Daytop Forbell Men's Shelter** with their central office located at 138-02 Queens Boulevard Briarwood, NY 11435-2647 a privately-owned non-profit 501 corporation organized under the laws of the State of New York and the City of New York to engage in business with the defendant **City of New York Department Homeless Services** and was at all times material to the complaint the Director of **Greenpoint Annex** and was at all times acting under the policies and procedures of the defendant **City of New York Department of Homeless Services.**

25. Defendant **Tavia Thomas** is a Supervisor Case Manager at **Samaritan-Daytop** recently assigned to **Greenpoint Annex** located at 99 Meserole Ave, Brooklyn, NY and at all times an employee of **Samaritan-Daytop Forbell Men's Shelter** with their central office located at 138-02 Queens Boulevard, Briarwood, NY 11435-2647, and was acting in concert with the defendant(s) **City of New York Department of Homeless Services** at all times material to the complaint and was at all times acting under the policies and procedures of the Defendant **City of New York Department of Homeless Services.**

26. Defendant **Michael Chavez** is a Resident Aide at **Greenpoint Annex** for **Samaritan-Daytop** located at 99 Meserole Ave, Brooklyn, New York and at all times an employee of **Samaritan-Daytop Forbell Men's Shelter** with their central office located at 138-02 Queens Boulevard, Briarwood, NY 11435-2647, and was acting in concert with the defendant(s) **City of New York Department of Homeless Services** at all times material to the complaint and was at all times acting under the policies and procedures of the Defendant **City of New York Department of Homeless Services.**

27. Defendant **Williams,** Shift Supervisor for **Samaritan-Daytop Flushing Annex** located 138-46 Northern Boulevard, Flushing, New York 11354 and at all times an employee of **Samaritan-Daytop** with their central office located at 138-02 Queens Boulevard, Briarwood, NY 11435-2647, and was acting in concert with the Defendant(s) **City of New York Department of Homeless Services** at all times material to the complaint and was at all times acting under the policies and procedures of the Defendant **City of New York Department of Homeless Services.**

28. Defendant, **Security Officer Smith** is a Security Officer for a private for-profit Corporation **FJC Security (Allied Universal)** with their central office located at 229 West 36th Street, New York, NY 10018, and at all times relevant herein an employee of Defendant **Allied Universal Security** acting in concert with the **City of New York Human Resource Administration Police** and at all times material to the complaint was acting under the policies and procedures of the Defendant **City of New York Human Resource Administration Police**.

29. Defendant, **Breaking Ground 250 Ashland Place** is a **not-for-profit 501** corporation located at 330 West 42nd Street, New York, NY organized under the laws of the **State of New York** and **City of New York** to engage in business with the defendant **City of New York** and were at all times material to the complaint contracted with the **City of New York Housing Development**

**Corporation** to provide services to the Homeless and vulnerable community of the City of New York under the provisions related to the Fair Housing Act, Affordable Housing, and was at all times relevant to this complaint acting under the policies and procedures of the **City of New York Housing Development Corporation**.

30. Defendant **Vanessa Cucurullo** is a Leasing Manager for **Defendant Breaking Ground 250 Ashland Place Lottery**, with her office located at 330 West 42nd Street, New York, NY, and at all times relevant herein an employee of Defendant **Breaking Ground** acting in the interest of the defendant **City of New York Housing Development Corporation** and at all times material to the complaint was acting under the policies and procedures of the Defendant **City of New York Housing Development Corporation.**

31. At all times material to this complaint, Defendants are and were herein duly appointed and acting officers, servants, employees and agents of the **City of New York**, a municipal agency of defendant **City of New York**, at all times relevant herein, the individual defendants were acting **under color of the laws, statutes, ordinances, regulations, policies, customs and/or usages** of **the State of New York and City of New York**, in the course and scope of their duties and functions as officers, agents, servants and employees of Defendant **City of New York,** were acting for, and on behalf of, and with power and authority vested in them by the **City of New York, New York Police Department and Department of Homeless Services, Steven Banks, Christopher Wintermute, Margaret Bauert, David Miller, Eric Stovall and the 32nd Precinct, Police Officers Bilchetti and Dumeng of the 109th Precinct** were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. They are sued individually and in their official capacity.

32. At all times material to this complaint, defendants are and were herein duly contracted private **not-for-profit 501 Corporation**, engaged in the enforcement of policies and procedures of the **City of New York**, and at all times relevant to this complaint, Defendant(s) **Acacia Network defendant Shanella Moore** and **Shana Ordonez (Julio's Place)** along with Defendant **S.E.R.A. Security** and **S.E.R.A. Security Officer Stone** were contracted with the **City of New York Department of Homeless Services** and were acting as agents of the **City of New York Department of Homeless Services (hereinafter DHS Defendants)** when the employees were indiscriminately enforcing the policies, rules and regulations of **DHS Defendants** and were active participant 501 Organization to provide shelter services to the Homeless population, and as such were representing the **City of New York** and **DHS Defendants** interest when such policies and procedures were enforced against the plaintiff in a discriminatory and retaliatory manner in the scope of their duties and functions as employees, agents, servants of the **City of New York** contracts, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties when they deliberately provoked, instigated, maliciously abused their duties with the intent to deprive plaintiff, a citizen, of his constitutional rights, privileges and immunities and deliberately conspired and acquiesced, agreed, and provide support to the enforcement of such policies and procedures criminalizing the homeless, intended to deprive another of Equal Protection of the Laws. They are sued individually and as active participants (Acting in Concert) with the **City of New York** and **Defendants DHS** to deprive plaintiff of his civil liberties.

33. At all times material to this complaint, defendants are and were herein duly contracted private not-for-profit 501 Corporation, engaged in the enforcement of policies and procedures of the

City of New York, and at all times relevant to this complaint, Defendant(s) **Samaritan-Daytop (Greenpoint Annex Forbell)** were contracted with the **City of New York Department of Homeless Services** and were acting as agents of the **City of New York Department of Homeless Services** (**hereinafter DHS Defendants**);  when the employees were indiscriminately enforcing the policies, rules and regulations of **DHS Defendants** in a manner that treated and criminalized the homeless and were active participant 501 Organization to provide shelter services to the Homeless And vulnerable community, and as such were representing the **City of New York** and **DHS** Defendants interest when such policies and procedures were enforced against the plaintiff in a discriminatory and retaliatory manner in the scope of their duties and functions as employees, agents, servants of the **City of New York** and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties when they deliberately provoked, instigated, maliciously abused their duties with the intent to deprive plaintiff, a citizen, of his constitutional rights, privileges and immunities and deliberately conspired and acquiesced, agreed, and provide support to the enforcement of such policies and procedures intended to deprive another of Equal Protection of the Laws. They are sued individually and as active participants (Acting in Concert) with the City of New York and Defendants DHS to deprive plaintiff of his civil liberties.

34. At all times material to this complaint, defendants **Breaking Ground** are and were herein duly contracted private **not-for-profit 501 Corporation**, engaged in the enforcement of policies and procedures of the **City of New York Housing Development Corporation**, and at all times relevant to this complaint, Defendant(s) **Breaking Ground** were contracted with the **City of New York Housing Development Corporation** and were acting as agents of the **City of New York** when the employees were indiscriminately enforcing the policies, rules and regulations of the **Housing Development Corporation** in a manner intended to discriminate against the Homeless community by deliberately creating a policy of **community preference** that reinforced segregation and deprived the plaintiff of Equal Protection of the Law, as the practice of **community preference** permitted the **developer of 250 Ashland Place** to selectively choose more favorable working class candidates over otherwise eligible candidates who were homeless or otherwise vulnerable, and were active participant **not-for-profit corporation** to distribute the **Affordable Housing Units** and as such were representing the **City of New York** interest when such policies and procedures were enforced against the plaintiff in a discriminatory and retaliatory manner in the scope of their duties and functions in the course of their duties when they deliberately abused their responsibility with the intent to deprive plaintiff, a citizen, of his constitutional rights, privileges and immunities and deliberately conspired, acquiesced, agreed, and provide support to the enforcement of such policies and procedures intended to deprive another of Equal Protection of the Laws. They are sued individually and as active participants (Acting in Concert) with the **City of New York Housing Development Corporation** to deprive plaintiff of his Civil Liberties.

35. At all times material to this complaint, defendants **City of New York Department of Health and Mental Hygiene** in a manner intended to discriminate against the plaintiff by deliberately criminalizing the homeless and vulnerable community by creating policies that deprived plaintiff of Equal Protection of the Law, as the practice violated State Laws in the form of which it was intended to retaliate against the plaintiff, a Homeless citizen, in a manner to deprive him of his constitutional rights, privileges and immunities and deliberately conspired, acquiesced, agreed and provide support to the enforcement of such policies and procedures intended to deprive

another of Equal Protection of the Laws. They are sued individually and as active participants (Acting in concert) with the **City of New York** to deprive plaintiff of his Civil Liberties.

## NOTICE OF CLAIM

36. Plaintiff filed a Notice of Intention to file with the Corporation Counsel of the City of New York, setting forth the facts underlying plaintiff's claims against the defendant and City of New York.

37. The City initially assigned a claim number 2017PI012335 to plaintiff's claim, and was subsequently informed claim disallowed as it was not filed within 90 days from the date of occurrence, however plaintiff has sought including these claims in his original claims under Civil Action 16CV162, in which said claim arose during such pendency.

38. To date, plaintiff has received no answer and no compensation has been offered by Defendant City of New York in response to this claim.

39. This action has commenced within one year and ninety days of the date of occurrence of the events giving rise to this complaint.

## FACTS

40. On or about **July 8, 2016**, plaintiff was transferred to a shelter known to **DHS Defendants** as **Julio's Place** operated under one of many Networks of defendant **Acacia Network** located at 102-104 West 127th Street, New York, New York, in which plaintiff was assigned by the **DHS Defendants.**

41. On or about **July 9, 2016**, plaintiff was returning to **Julio's Place**, an **Acacia Network Operated Shelter** and was the target of a campaign of harassment on account of his activities seeking to reform policies and practices within the facility as well as that of the **Department of Homeless Services,** and that plaintiff alleges the defendants **Acacia Network  Defendants Shanella Moore and Shana Ordonez** along with **S.E.R.A. Security officer Stone** and **John Doe Security Officers** deliberately harassed the plaintiff, subjecting him to a hostile living condition on account of his activities.

42. On or about **July 17, 2016**, plaintiff **Victor M. Herrera** arrived at the assigned shelter and was set upon by **S.E.R.A. Security Officer Stone**, **Security officer Hunt and Wilson** in which Defendant **S.E.R.A. Security Officer Stone** placed plaintiff in an illegal and banded choke-hold, while **Acacia Network Shanella Moore and Shana Ordonez** staff stood by and permitted what she knew was a retaliatory attack intended to cause the plaintiff **Victor M. Herrera** harm, allowing an unwarranted use of force to be applied.

43. On or about **July 17, 2016**, the plaintiff **Victor M. Herrera** called 911 and when the **NYPD Lieutenant Beadeu and Police Officer Diaz Clarillo** arrived, refused to take a complaint or much less investigate the allegations by viewing the **video-feed** which would have substantiated that the plaintiff was the victim of an unprovoked attack.

44. On or about **July 17, 2016**, plaintiff was forced to leave shelter on account that the defendants **NYPD Lieutenant Beadeu and Police Officer Diaz Clarillo** failed to assure his safety and could not gain entry on account of the Defendant(s) **S.E.R.A. Security Officer Stone and Acacia Network Shanella Moore,** Defendants. Plaintiff was forced to sleep out as the Defendant **Department of Homeless Services** policy related to clients assigned shelter prohibited the plaintiff from seeking shelter elsewhere.

45. On or about **Tuesday, August 9, 2016,** the plaintiff arrived at **Julio's Place** after having experienced two weeks of continuous harassment intended to discourage his return, the plaintiff was prohibited from entering his official assigned shelter, as part of the ongoing campaign of retaliatory harassment. The plaintiff was assured that he would be permitted into the facility and followed by calling 911 and requesting assistance.

46. On or about **Tuesday, August 9, 2016**, Defendants **Police Officers Christopher Wintermute, Margaret Bauert, David Miller and Eric Stovall** responded to **Julio's Place** located at 102-104-106 West 128th Street and approached the plaintiff, demanding the plaintiff step outside the premises, which plaintiff refused and demanded the defendant Officers perform their duty and inquire into the reasons for the refusal of entry defendant(s) **Shana Ordonez, Acacia employees and SERA Hunt Defendants** were deliberately depriving plaintiff of shelter and housing..

47. On or about **Tuesday, August 9, 2016**, defendant(s) **Police officers Christopher Wintermute and Margaret Bauert** sided with Defendant(s) **Shana Ordonez, Acacia Network Employee** and without a legal basis or justification, falsely provided information to Defendant **Police Officer Wintermute** who forcibly grabbed plaintiff, slamming plaintiff against the wall, causing **Victor M. Herrera** to bang his head against the wall. **Defendant Police Officer Christopher Wintermute** then whirled plaintiff around toward the security desk, slamming **Plaintiff Victor M. Herrera** against the desk, forcibly twisting plaintiff's arms behind and placing mechanical restraints on plaintiff **Victor M. Herrera's** wrist.

48. On or about **Tuesday, August 9, 2016**, defendant(s) **Police Officers Christopher Wintermute, Margaret Bauert, David Miller and Eric Stovall** entered into an agreement with **Acacia Network Shana Ordonez, Defendant employees and SERA Security Officer Hunt** to illegally arrest and falsely report plaintiff **Victor M. Herrera** as an **Emotionally Disturbed Person**, consummating the plaintiff's illegal removal and detention at **Harlem Hospital Medical Center**.

49. On or about **Tuesday, August 9, 2016**, the plaintiff was transported via **RMP** to **Harlem Hospital Medical Center**, and while in restraints, the unknown **Registered Nurse** attempted to perform a triage of the plaintiff by examination for which plaintiff refused to cooperate as plaintiff was being held against his own wishes and any treatment was not voluntary. Defendant(s) **Police Officer Christopher Wintermute and Margaret Bauert** attempted to force plaintiff to cooperate with the nurse by forcefully grabbing the plaintiff, lifting him off his feet and suspended the plaintiff in the air being held by his arms and legs, all the while demanding to be released.

50. On or about **Sunday, July 17, 2017 and Tuesday, August 9, 2016,** the plaintiff was admitted and held against his will overnight in the **Harlem Hospital Medical Center Psychiatric Ward** even after the defendants collectively were warned that the plaintiff was currently pursuing litigation on the wrongful practice of **Reporting of Emotionally Disturbed Persons**. The **Acacia Employee Shanella Moore and Shana Ordonez** being behind the information improperly divulged HIPPA Protected Mental Health information that plaintiff was mentally ill put into motion the actions that lead to the collective agreement to violate plaintiff's **Victor M. Herrera** rights to be free from unlawful restraint of liberty, wrongful imprisonment, assault and battery.

51. On or about **Wednesday, August 10, 2016,** the plaintiff was released from the wrongful imprisonment at **Harlem Hospital** and while pursuing litigation, sought to have the present matters related to these defendants, **Acacia Network, SERA Security, NYPD and Harlem Hospital Health and Hospital Corporation** pursued, however the Court before the **Honorable Judge Fialla** denied plaintiff the opportunity to **Amend** pleadings to include the allegations as herein claimed.

52. On or about **January 30th, 2017**, the Defendant's, **Department of Homeless Services, Jason Hansman,** along with **Iris Rodriguez** and **Frantz Dupree,** conspired to deprive plaintiff of his rights, privileges and immunities by deliberately having plaintiff **Victor M. Herrera** transferred to a Shelter known to be controlled by **DHS Police** for which plaintiff has had been the subject of deliberate and intended harassment because of his well-known reform activities. The Defendant(s) collectively have engaged in repeated transfers intended to harass and discourage the plaintiff from continuing his activities by ignoring policy or otherwise circumventing them to deprive plaintiff **Victor M. Herrera** of Equal Protection of the law.

53. On or about **March 22, 2017**, after having a meeting with Defendant **Jason Hansman and Frantz Dupree**, the plaintiff along with defendant's representing the **City of New York** agreed to have plaintiff officially transferred to a **YMCA Facility** located at 99 Meserole Ave, Brooklyn, New York, in a single room, away from **DHS Police controlled Facilities** since it was agreed that the presence of such **Police** posed a significant risk for plaintiff to be continuously harassed and wrongfully reported as emotionally disturbed.

54. On or about **April 26, 2017**, the plaintiff proceeded to 109 East 16th Street Human Resource Administration to submit his application for car fare allowance while attending **Berkeley College**. While at the 9th floor Training and Assessment Group (TAG), **Jane Doe Human Resource Case worker** refused to take the plaintiff's documentation for which the plaintiff immediately contacted the Defendant **Commissioner Banks** office of Constituent Services speaking to a **Ms. Campbell**. While on the phone complaining of the **Jane Doe Case Worker** refusal to accept the plaintiff's documentation, **Defendant FJC Security Officer Smith** engaged the **Jane Doe Case Worker** and inquired whether the plaintiff's services were terminated for which without justification and knowing the plaintiff was seeking supervisory intervention by his call, conceded, deliberately putting into motion **FJC Security Officer Smith** into aggressively directing the plaintiff to leave or be charged with trespassing.

55. On or about **April 26, 2017,** the plaintiff knowing the practice of the **Human Resource Administration** in implementing such a scheme to rid themselves of troublesome clients' informed **Ms. Campbell** of the office of Constituent Services that he would return the call as his

services were being terminated and needed to leave. The plaintiff **Victor M. Herrera** proceeded to the elevators to leave when **FJC Security Officer Smith**, trailed behind the plaintiff when the plaintiff made clear she was not authorized to interfere with the application process of clients at whim. **Defendant FJC Security Officer Smith** demanded the return of a numbered card given to plaintiff when he requested a supervisor for which **Victor M. Herrera** responded he did not have. **Defendant FJC Security Officer Smith** demanded to search plaintiff's bag for which the plaintiff responded was out of the question and informed the defendant to seek the card in the interior of the waiting area. Upon the arrival of the elevator, plaintiff attempted to enter the elevator for which defendant **FJC Security Officer Smith** immediately grabbed plaintiff preventing his departure. The plaintiff demanded to be released and not touched, in which numerous other unknown **FJC Security Officers responded** while **Defendant FJC Security Officer Smith** engaged an alarm to **HRA Police.**

56. On or about **April 26, 2017,** Responding defendant **HRA Police Sergeant Rosa** exited the elevator, observed plaintiff objecting to his unwarranted treatment, and without justification or inquiry, forcefully attacked the plaintiff **Victor M. Herrera** by slamming plaintiff up against the wall, causing plaintiff's head to come in contact with the wall, his **Fossil Designer shade** shooting off the plaintiff's head, and followed by being slammed against the ground with such force causing again for the plaintiff's head to come in contact with the ground. **Defendant Sergeant Rosa** response and behavior was so outrageous it could not be deemed isolated. Plaintiff observed an **FJC Security Officer** force himself between the **Defendant Sergeant Rosa** and the plaintiff to prevent further injury acknowledging the extent of loss of control the **Defendant Sergeant Rosa** displayed. The plaintiff was placed in mechanical restraints and escorted to a first-floor command post.

57. On or about **April 26, 2017,** the plaintiff was escorted into a command room, and without reason or justification, rather just to show his abusive authority, **Defendant Sergeant Rosa** grabbed the plaintiff via the mechanical restraints and told him to have a seat across the room, forcefully pushing the plaintiff toward the chair by the desk. The plaintiff, in mechanical restraints behind his back had no way to prevent his fall and slammed into the chair and wall. The plaintiff immediately advised the **Defendant(s)** of the extent of the actions and not having any idea of the gravity of what they have done and demanded immediate medical attention and **NYPD 13th Precinct response** for which the **Defendant Sergeant Rosa** refused. The plaintiff then observed the **Sergeant Defendant** direct a subordinate to issue plaintiff a Desk Appearance Ticket for which the plaintiff immediately responded he will not accept and it is the duty of the defendant to initiate an arrest as he was not authorized to issue an appearance ticket in place of an arrest with the extent of force used.

58. On or about **April 26, 2017,** the plaintiff's demand immediately motivated the **Sergeant Defendant Rosa** to contact his superior, an unknown **John Doe Captain** who appeared and conjured up the necessary story to go along with the excessive use of force, namely that the plaintiff assaulted **FJC Security Officer Smith** by elbowing her which upon information and belief was the root of justification for the force, assigning the arrest (Collar) to **Defendant HRA Officer Waller**, who was nowhere in the vicinity of the incident and use of force at the time. Defendant **FDNY John Doe EMS** responded and without inquiry to injury, allowed **Defendant Sergeant Rosa** to force the plaintiff to walk to the awaiting **FDNY Ambulance**. During the plaintiff's transport to Hospital, Defendant **FDNY John Doe EMS** did not inquire nor examine plaintiff for

injuries. The Plaintiff was improperly treated and none of his injuries appropriately recorded. Plaintiff was forced to photograph his injuries with his cell phone upon his release from arrest.

59. On or about **April 26, 2017**, the plaintiff was arrested, processed at the 113th Precinct and attempted to address his concern with the NYPD Desk duty officer who refused to hear the plaintiff's concern for a cross complaint against **Defendant FJC Security Officer Smith** for having used physical force when the defendant knew she was not justified unless it was clear plaintiff posed a physical threat to her or others, which he did not. The plaintiff appeared before the New York County Criminal Court and was released on his own recognizance. Plaintiff immediately followed with a written complaint to **the Department of Investigation** who commonly allow for the agency overseeing the **HRA Police** to investigate their own, no oversight nor process in place to hold accountable those staff that engage in misconduct. Plaintiff never heard from the **City of New York** on his complaint.

60. On or about **July 3, 2017** the plaintiff returned to the **YMCA Facility**, his official shelter**,** and upon requesting access to his assigned room (No. 413) noticed that his room was unlocked and appeared to be searched. The plaintiff inquired as to the unlawful entry for which no response was forthcoming. The plaintiff, **Victor M. Herrera** respectfully filed an email concern related to the unauthorized entry for which only a staff of **Samaritan-Daytop** could have undertaken as they are the only authorized individuals with access aside from the **YMCA Housekeeping**.

61. On or about **July 12, 2017**, defendant(s) **Tavia Thomas and Michael Chavez** deliberately conspired to violate their own rules by deliberately and deceptively entering the plaintiff's assigned room at the **YMCA** and rummage through his personal items, including legal documents plaintiff had been working on. The plaintiff objected of such actions and filed a written complaint surrounding the unlawful entry for which the policy was not followed rather the entry was intended as part of a pattern of conduct intended to create a hostile environment for plaintiff to have plaintiff ultimately removed by the defendant, **Frantz Dupuy**.

62. On or about **July 12, 2017,** the plaintiff proceeded to the **YMCA** accompanied by a Social Worker and a Peer Specialist of the **Center for urban Community Services (Hereinafter CUCS)** and notified the **NYPD** of wanting to file a harassment complaint for the actions taken against the plaintiff for his having pursued written complaints against staff at the **Greenpoint Annex** and being harassed for them. The responding **NYPD Police Officers** refused to take a harassment under the same theory of an illegal eviction and complaint for the deliberate harassment the **Samaritan-Daytop** defendants were engaged in to deliberately have plaintiff unlawfully transferred or removed, leaving plaintiff with no legal recourse to vindicate his rights. Subsequently all measures of intent were taken to assure the plaintiff's removal.

63. On or about **July 14, 2017,** Defendant **Tavia Thomas** appeared at the plaintiff's assigned room 413 along with **NYPD Police Officers Ferguson Badge No 10953 and Khan Badge No. 32882** seeking to enforce an unwritten policy of video and/or surveillance cameras not being permitted on the grounds of the facility claiming confidentiality for which the plaintiff demanded a cease and desist of the pattern of harassment plaintiff was being subjected to. The action of defendant **Tavia Thomas** was solely intent on her campaign for which previously the plaintiff questioned her actions in assigning herself as his case manager and the plaintiff's **Victor M. Herrera's** demand to be restored to his original assigned Case manager. Defendant **Thomas**

actions put into motion a campaign of harassment intended to have the plaintiff wrongfully transferred and removed.

64. On or about **July 17, 2017**, after numerous emails to Defendant(s) **Jason Hansman and Frantz Dupuy**, the plaintiff was issued a **Client 48 Hour Notification of Transfer** for which the plaintiff **Victor M. Herrera** objected and sought review. However, **Defendant(s) Jason Hansman** along with **Defendant Frantz Dupuy**, knowing that their actions would be at risk of violating plaintiff's constitutional rights, deliberately disregarded a known and obvious consequence of their actions of criminalizing the client on account of his Homelessness, and upheld the transfer, for which the plaintiff fearing a repeat of prior acts of retaliation refused to accept any housing option extended by the defendants unless it was not with the defendant's **Samaritan-Daytop**. Defendant(s) **DHS Jason Hansman and Frantz Dupuy** knowing the plaintiff was experiencing **Post-Traumatic Stress Disorder** from the previous actions of the City of New York, deliberately ignored the plaintiff and left the plaintiff to the discouraging choice of being housed in a **Broken-windows type** environment where rampant drug use was evident versus sleeping in the streets, plaintiff choosing the former fearing for his safety.

65. Since **July 17, 2017,** the plaintiff has had no place to stay, has requested numerous reassignment of shelter housing to defendant(s) **Jason Hansman and Frantz Dupuy** based on the grievances and the ensuing actions taken against him by defendant(s) **Samaritan-Village, Da'wud Lee, Wayne Jordan,  Tavia Thomas and Michael Chavez** unless the **City defendants** were prepared to restore him to the previous status he enjoyed for which the defendant(s) **Jason Hansman and Frantz Dupuy** deliberately refused, fearing what they termed would be stirring up trouble with the client's reform activities, which has been the motivation behind the practice. The fact that plaintiff has been humiliated before his peers for having engaged in reform activities is just the message the defendant(s) action desired to send to the rest of the clients in shelter, and by attempting to have the plaintiff placed in a much worse deplorable environment, it is the measure behind their motivation to parade the plaintiff **Victor M Herrera** before other clients of the shelter to emphasize the point.

66. On or about **Tuesday, August 25th, 2017,** the defendant(s) **Frantz Dupuy, Jason Hansman, and Da'wud Lee** met with the plaintiff **Victor M. Herrera** and held a conference that was dominated with discriminatory enforcement intended to deprive plaintiff of equal rights, privileges and immunities in that the defendant(s) collectively forced plaintiff into accepting terms and conditions that were conditioned on the deterrence of his reform activities, intended to discourage plaintiff, and such conditions were part of a design and pattern of depriving the Homeless community of equal protection of the law in that the defendant(s) collectively were engaged in the enforcement of a policy of **community preference** in the placement of individuals who were selected for **Affordable Housing Lottery** and denied based on factors that would reinforce segregation of the sort that impacted on the Homeless community or class from meeting the required criteria that was only intended to discriminate against the vulnerable class of Homeless, and that the defendant(s) collectively refused to assist the plaintiff **Victor M. Herrera** in obtaining and providing the necessary documents to assure the plaintiff eligibility for the **Affordable Housing Unit at 250 Ashland Place versus another housing in a** Citywide practice of gentrification and housing the Homeless in areas and less favored communities outside those areas of which developers were permitted to utilize methods intended to discriminate and engage in selective placement of community preferred individuals that discriminately excluded the homeless community.

67. On or about **March 22, 2017**, the plaintiff was selected from a **Lottery for 250 Ashland Place** managed by the defendant **Breaking Ground** and given **Lottery Number 2724**. The defendant(s) recently placed the plaintiff on the waiting list and recently requested document(s) on **August 22, 2017** related to the affordable unit for which the plaintiff sought reasonable time to respond for which the defendant **Vanessa Cucurullo** did not respond nor provided a reasonable opportunity to allow the plaintiff **Victor M. Herrera** to obtain the necessary documents.

68. On or about **August 29, 2017**, the defendant(s) **Breaking Ground, Vanessa Cucurullo,** along with the defendant **City of New York Housing Development Corporation** rejected the plaintiff's application and **Lottery** eligibility under a discriminatory approach to deprive him of equal rights, privileges and immunities and that the defendant(s) collectively were engaged in intentionally sabotaging Homeless community clients from eligibility by enforcing the **community preference policy** that reinforces segregation and denies certain class of people from the **Lottery** by engaging in income based discriminatory practices they knew would prevent an otherwise eligible candidate from benefitting from the **Affordable Housing Program** and otherwise deny otherwise eligible Homeless candidates equal protection of the law.

69. On or about **July 23, 2017**, the plaintiff was scheduled for a **Fair Hearing** held under the jurisdiction of the **Office of Temporary Disability Assistance** for the **State of New York**, an Administrative Tribunal established by **State Law** to afford mediation for citizens and non-citizens alike an opportunity to be heard under the **Social Service Laws of the State of New York**, for which the plaintiff intended to call Defendant **Henry Stemler** as a witness to the events occurred on **July 17, 2017**, in which the plaintiff was the subject of a retaliatory removal from the **YMCA** located at 99 Meserole Ave, for which the plaintiff sought a State protected Fair Hearing for the actions of the Defendant(s) **Samaritan-Daytop and Department of Homeless Services City of New York**.

70. The plaintiff, **Victor M. Herrera** has been the subject of countless acts of retaliation motivated by the pursuit of his constitutionally protected activity. The plaintiff has filed numerous grievances and complaints to those defendant(s), including the **City of New York** to no avail. The defendant(s) actions were intended to punish plaintiff and was part of a widespread pattern of behavior displayed by the Defendant Superiors in the **Department of Homeless Services and Human Resource Administration,** and repeatedly turned a blinds eye to the behavior, taking no preventative precautions to divert what they were aware were retaliatory actions which caused the harm alleged herein. Upon information and belief, Defendant **City of New York** has, acting through its **NYPD, DHS, DOI, and HRA** developed, implemented, enforced, encouraged, and sanctioned a de facto policy, practice, and/or custom of unlawfully interfere with and/or arrest, without reasonable suspicion or probable cause, individuals who exercise their rights under the First Amendment by engaging in misconduct intended to discourage and deter the pursuit of protected activity.

71. Since **July 2016**, the plaintiff has been subjected to a host of debilitating practices intended to discourage him from his well-known reform activities, was the subject of **EDP's** while pursuing claims against the **City of New York** by **City of New York personnel, agents, servants and employees**, including acting in concert with Defendant(s) **Acacia Network and Samaritan-Daytop personnel, agents, servants and employees** enforcing Citywide policies, rules and regulations which are exclusively the prerogative of **City employees.** The plaintiff has been the

victim of theft, unable to gain stable footing toward his educational and academic endeavors, has been psychologically and emotionally attacked by the retaliatory conduct, and have deliberately delayed services in prevention and aid to economic crisis from worsening. The Defendant(s) collectively however created a systemic pattern of behavior intended to punish plaintiff, **Victor M. Herrera** for his First Amendment protected activity resulting in further worsening of economic crisis.


## CAUSES OF ACTION

**FIRST CLAIM: FALSE ARREST AND WRONGFUL IMPRISONMENT**
**EXCESSIVE FORCE DEPRIVATION OF RIGHTS UNDER THE FOURTH, FIFTH,**
**NINTH AND FOURTEENTH AMENDMENT(S) AND 42 USC§1983**

72. Plaintiff re-alleges and incorporates by reference the allegations as set forth in each preceding paragraph 1 through 50 as if fully set forth herein.

73. The conduct and actions of defendant(s) **Acacia Network, employees Shanella Moore and Shana Ordonez and SERA Security**, acting under the exclusive authority of the **City of New York**, acting in concert and under **color of law** in authorizing, directing and/or causing plaintiff to be attacked by **City of New York employee Police Officer Defendant(s) Christopher Wintermute, Margaret Bauert, David Miller, Eric Stovall** was by the very nature of the discriminatory and retaliatory animus set out by the **City of New York Defendant DHS** complicit with and acting in concert with the **non-profit 501c Corporation Acacia Network** was designed to deprive plaintiff of rights, privileges and immunities, was done with the intent to subject the plaintiff **Victor M. Herrera** to the unnecessary and wanton use of force by engaging in a retaliator vindictive attack against the plaintiff to force compliance and/or deter plaintiff's reform activities, to the will of the agents, servants and employees of the private **not-for-profit Corporations**, was done intentionally, willfully, maliciously, and with a deliberate indifference and/or reckless disregard for the natural and probable consequences of their acts, was done without lawful justification and reason, and was designed to and did cause specific physical and emotional pain and suffering in violation of plaintiff's rights as guaranteed under 42 USC§§1983, 1985 and the Fourth and Fourteenth Amendments to the United States Constitution, including the right to be free from the use of excessive, unreasonable and unjustified force.

74. As a direct and proximate result of the foregoing, plaintiff was subjected to great physical and emotional pain and humiliation, was deprived of his liberty and was otherwise damaged and injured.

**SECOND CLAIM:**

**DEPRIVATION OF RIGHT TO PETITION AND EXPRESSION OF**
**RIGHTS UNDER THE FIRST, NINTH AND FOURTEENTH AMENDMENTS**
**AND 42 USC §1983, 1985.**

75. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph 1 through 53 as if fully set forth herein.

**76.** The defendant(s) **DHS, Jason Hansman, Frantz Dupuy, Iris Rodriguez, NYPD Police Officer(s) Christopher Wintermute, Margaret Bauert, David Miller, Eric Stovall, Acacia Network Shanella Moore and Shana Ordonez Staff and supervisors, SERA Security Officer Hunt, SERA Security Officer Stone, SERA Security Officer Wilson, Samaritan-Daytop Village, Da'Wud Lee, Wayne Jordan, Tavia Thomas, Michael Chavez** actions were done with a malice aforethought, acting in concert with one another and acting collectively under **color of law**, was done due to defendant(s) collective personal animus and bias against the content of plaintiff's **Victor M. Herrera's** grievances and speech; was done to interfere with, and chill the exercise of his right to petition for the redress of grievances, and additionally enforced under a widespread pattern of conduct condone and ratified by the defendant(s) **City of New York** , was done intentionally, maliciously, with a deliberate indifference and/or reckless disregard for the natural and probable consequence of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious pain and suffering in violation of plaintiff's constitutional rights as guaranteed under 42 USC §1983, and the First and Fourteenth Amendment to the United States Constitution.

77. As a direct and proximate result of the foregoing, plaintiff was subjected to great physical and emotional pain and humiliation, was deprived of his liberty and was otherwise damaged and injured.

**THIRD CLAIM:**

**MONELL CLAIM AGAINST THE PRIVATE ACTORS**
**ENGAGED IN DELIBERATE INDIFFERENCE WHEN IT ENGAGED**
**IN A WIDESPREAD PRACTICE OF IMPERMISSIBLY ENFORCING CITY**
**POLICY THAT RESULTED IN THE WRONGFUL USE OF EDP BY THE**
**CITY DEFENDANTS – 42 USC §1983**

78. The plaintiff re-alleges and incorporates by reference the allegations as set forth in each preceding paragraph 1 through 56 as if fully set forth herein.

79. The **City of New York** directly caused the constitutional violations suffered by plaintiff and is liable for the damages suffered by plaintiff as a result of the conduct of the defendant employees, agents, officers and servants of the **City of New York**. The conduct of the defendant officers was a direct consequence of policies and practices of the **Defendant City of New York** that deliberately permitted the **non-profit 501 corporations** to enforce policies exclusively the prerogative of the **City of New York** agents, servants, and employees.

80. At all times relevant to this complaint **Defendant City of New York**, acting through the **Defendant(s)DHS, HRA, HPD, NYPD, Acacia Network, Samaritan-Daytop,** had in effect policies, practices, and customs that condoned and fostered the unconstitutional conduct of the individual **Defendant(s)**, and were a direct and proximate cause of the damages and injuries complained of herein.

81. The **July 9, 2016** official transfer of the plaintiff into a **Shelter** specifically designated **MICA** was incidental to plaintiff having complained of staff and objecting to the conduct of the **Defendant employees**, including the practice of enforcing policies that permitted the **NYPD, DHS, HRA,** and the co-defendant(s) **Acacia Network and Samaritan-Daytop** to punish plaintiff using means that permitted the use of practices that were either legitimate or just condoned, deliberately to cover up the misconduct demonstrated the deliberate and intentional continuous indifference of the defendant **City of New York**, when defendant(s) **City of New York** along with their **non-profit 501 Corporations** failed to take corrective measures to deter the illegal action, and ratified the behavior by failing to respond to the plaintiff's grievances and complaints. The **July 17, 2016** incident were among the first of many events in which plaintiff was subjected to the inhumane treatment at the hands of numerous employees, agents, officers and servants of the **City of New York**.

82. At all times relevant to this complaint, **Defendant City of New York**, acting through its **employee Police Officers, DHS, HRA, NYPD, FDNY** and through the individual defendants of the **NYPD and John Doe FDNY EMS**, had policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for the plaintiff having engaged in First Amendment Activity. Upon information and belief, **Defendant City of New York** planned and implemented a policy, practice, custom and usage controlling complaining clients in the **New York City Shelter System** and **Human Resource Administration Business Offices** by permitting the **NYPD, FDNY, DHS, and HRA Police** along with **FJC Security (Allied Barton)** and **Social Service agents** employed to provide services to the vulnerable community to use discriminatory practices and/or procedures that directly criminalized the plaintiff directly ratifying a policy of terminating services within that immediately set into motion turning an ordinary protected event into a criminal offense, resulting in the wrongful use of force and arrest of the plaintiff **Victor M. Herrera**, and by using such methods, the **Defendant City of New York** were permitting the behavior to go unchecked.

83. In connection with the plaintiff's own complaints against staff and police, **The City of New York** consciously disregarded the illegality and unconstitutionality of said detentions, use of force, and retaliation in order to punish and suppress complaining clients from pursuing grievances by provoking such hostility toward clients, creating an unhealthy and risky environment and deliberately attacking clients without provocation, solely on account of a **Social Service worker** colluding with **FJC Security** in the control of troublesome social reformist as the plaintiff **Victor M. Herrera**. These policies, practices, customs and usages that permitted **FJC Security** to engage in the sort of direct interference with clients' application process by colluding with the employees of the **City of New York Human Resource Administration** were a direct and proximate cause of the unconstitutional conduct alleged herein.

84. The existence these unconstitutional customs and policies, specifically as it relates to client's applying for **Social Services Benefits,** is evidenced by the countless repeated occurrences of similar wrongful conduct against the plaintiff, **Victor M. Herrera.**

85. **The City of New York** knew or should have known of the defendant(s) officer(s) propensity to engage in misconduct against those engaging in First Amendment protected activity of the type alleged herein. Upon information and belief, prior to **July 9, 2016** and thereafter, the **City of New York** was aware of numerous complaints of **Police Misconduct** involving the use of unwarranted and unjustified use of excessive force and retaliatory use of force against plaintiff by members of the **NYPD and HRA Police**. Despite its knowledge of such incidents, including one occurring some 7 years past, the plaintiff is still affected by the decisions of the **City of New York Human Resource Administration** by being barred from 14 Boerum Place, Brooklyn, NY, and despite it being the plaintiff who called 911, such knowledge of prior incidents of misconduct, the **City of New York** failed to take remedial action.

86. Additionally, **The City of New York** knew or should have known more specifically that **Police Officer(s) Christopher Wintermute, Margaret Bauert, David Miller, Eric Stovall, HRA Sergeant Rosa, HRA Police Officer Waller** propensity to engage in misconduct of the type alleged herein and to lie to cover up such misconduct, deliberately abusing the process and engaging in malicious prosecutions of the plaintiff **Victor M. Herrera** the moment the **City of New York** decided to have the plaintiff officially assigned to a **Shelter Facility Classified MICA**. Upon information and belief, prior to **July 9, 2016, April 26, 2017 and July 19, 2017**, the **City of New York** was aware of numerous complaints related to the conduct at such **non-profits**. Despite its knowledge of such incidents of misconduct, **The City of New York** failed to take remedial action.

87. It was the policy and/or custom of the **City of New York** to inadequately and improperly investigate citizen complaints of Police Misconduct, and acts of misconduct were instead tolerated by the **City of New York,** including but not limited to, incidents listed above.

**FOURTH CLAIM:**

**ARTICLE I, §11 OF THE NEW YORK
STATE CONSTITUTION**

88. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 72 as if fully set forth herein.

89. The acts of defendants, acting under the **color of law**, in having plaintiff subjected to arrest under the false pretense to cover up misconduct of the **City Defendant(s) DHS** and **HRA** contracted **non-profit and for profit corporations** and in having him physically assaulted were motivated by a retaliatory animus, racially motivated and were done without lawful justification, and were designed to and did cause specific serious bodily harm, pain and suffering to the plaintiff in violation of his Constitutional rights to equal protection as guaranteed by **Article I, Section 11** of the Constitution of the State of New York.

**FIFTH CLAIM:**

**ARTICLE I, §12 OF THE NEW YORK**
**STATE CONSTITUTION**

90. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 75 as if fully set forth herein.

91. The acts of defendants, acting under **color of law** by their **501 contract** and enforcement of **City Policies**, **rules, regulations, customs and usage**, in subjecting plaintiff **Victor M. Herrera** to unlawful search and seizure, false arrest, wrongful imprisonment and excessive force while in the City contracted shelters by physically assaulting plaintiff and/or causing plaintiff to be subjected to the unlawful search and seizure, arrest and excessive force by intentionally and deliberately lying to cover up misconduct of individual employees, were done without reasonable suspicion or probable cause and were designed to and intended to, and did cause, specific and serious bodily harm, pain and suffering to the plaintiff in violation of plaintiff Constitutional Rights as guaranteed by **Article I, Section 12** of the Constitution of the State of New York.

92. The foregoing act and conduct of defendant **501 Corporation Acacia Network and Samaritan-Daytop**, acting in concert with the **City of New York**, were a direct and proximate cause of injury and damage to plaintiff **Victor M. Herrera** and violated his rights as guaranteed by the Constitution of the State of New York.

**SIXTH CLAIM:**

**CLAIMS AGAINST NOT-FOR-PROFIT ACACIA NETWORK**
**SAMARITAN-DAYTOP, BREAKING GROUND, SERA SECURITY**
**AND FJC SECURITY CONSPIRACY TO DEPRIVE PLAINTIFF OF RIGHTS,**
**PRIVILEGES AND IMMUNITIES GUARANTEED BY THE**
**CONSTITUTION OF THE UNITED STATES AND STATE OF NEW YORK**

93. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 77 as if fully set forth herein.

94. The defendants, **Acacia Network, Samaritan-Daytop, SERA Security and FJC Security** were involved in the unconstitutional act when it otherwise engaged in the unprovoked attacks intended to create hostile responses and improper restraint of liberty and/or retaliatory acts from the **City of New York**, failed to otherwise stop the unconstitutional conduct and deliberately ignored, permitted, suborned, provoked and acquiesced in the unconstitutional violations that included the improper reporting of **Emotionally Disturbed Persons** by soliciting, participating and engaging in the unconstitutional use of such practices against the plaintiff that deliberately and intentionally set into motion retaliatory measures intended to cause harm for plaintiff having engaged in protected First Amendment activity, and if not for their own culpable conduct in knowingly conspiring with the City of New York in providing false claims to the City of New York **NYPD, FDNY, Health and Hospital Corporation** to establish a false basis for arrest and

justification for plaintiff's seizure, that plaintiff **Victor M. Herrera** would otherwise not be subjected to, and otherwise knowingly permitted the practice to go unchecked.

95. As a direct and proximate result of the misconduct and failure to prevent or protect the plaintiff **Victor M. Herrera** from the known and obvious unconstitutional acts that were the proximate cause of the plaintiff injury, the private not-for-profit and for-profit defendants were just as culpable in allowing the unconstitutional injury to manifest within their own corporate businesses that subjected plaintiff to, thereby sustaining the damages to plaintiff alleged herein.

**SEVENTH CLAIM:**

**STATE COMMON LAW MALICIOUS ABUSE
OF PROCESS AND MALICIOUS PROSECUTION**

96. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 92 as if fully set forth herein.

97. By their conduct in providing false allegations and claims to the City of New York, DHS, HRA, NYPD, FDNY, and Health and Hospital Corporation employees, the non-profits Acacia Network, Samaritan-Daytop, along with FJC and SERA Security are liable to plaintiff for having committed malicious prosecution and abuse of process under the laws of the State of New York.

98. Defendants **FJC Security Officer Smith**, **SERA Security Officer Stone**, **SERA Security Officer Hunt and Wilson**, **Acacia Network** and Defendant(s) **Shanella Moore and Shana Ordonez** and numerous other non-profits employees, agents, officers and servants of said non-profits maliciously commenced proceedings against the plaintiff **Victor M. Herrera**, having him charged by falsehood of reporting emotionally disturbed persons, and falsely charged with criminal offenses to cover up their own misconduct and unwarranted use of force, plaintiff was falsely and without probable cause charged with violations of the laws of the state of New York under the Mental Hygiene Law.

99. The commencement and continuation of the **MHL Proceedings** against plaintiff **Victor M. Herrera** was malicious and without probable cause and intended to gain an impermissible advantage over the plaintiff in covering up misconduct in their unwavering policy of criminalizing the Homeless community.

100.     All proceedings were terminated in plaintiff's favor as the defendants' non-profits could not establish a prior mental health history and plaintiff was discharged with unspecified diagnoses insufficient to establish the necessary standard of determination or was otherwise below the standard necessary to establish probable cause, and such actions were part of an overall scheme to criminalize the plaintiff and discredit his advocacy.

101.     Defendants, **City of New York, DHS, HRA, HHC, FDNY, HDC, HPD, Breaking Ground, Acacia Network, FJC Security and Samaritan-Daytop,** theirs officers, agents, servants and employees were responsible for the malicious prosecution and abuse of process of plaintiff in retaliation for plaintiff having petitioned for redress of grievances. The City of New York, as a direct proximate relationship with the non-profit Corporations in allowing the private actors to

engage and carry out such conduct, the non-profit Corporations are responsible for their wrongdoing by the retaliatory nature of the alleged conduct herein.


**PRAYER FOR RELIEF**


**WHEREFORE**, Plaintiff **Victor M Herrera** prayer for relief is as follows:

1) A declaration that the defendant(s), **DHS, NYPD, FDNY, HDC, BREAKING GROUND, ACACIA NETWORK, SERA SECURITY, FJC ALLIED UNIVERSAL SECURITY AND SAMARITAN-DAYTOP, SHANELLE MOORE, SHANA ORDONEZ, SERA SECURITY OFFICER STONE, SERA SECURITY OFFICER HUNT and WILSON,** and any employee, agent, officer or servant unknown to plaintiff during the incidents leading up to the injury, be collectively and in concert, held accountable for violating plaintiff's First, Fourth, Fifth and Fourteenth Amendment Rights to the U.S. Constitution and plaintiff's rights under the New York State Constitution and State Common law in the manners alleged herein, upon consideration of the evidence adduced at trial or otherwise;

2) A declaration that the defendant(s) **DHS, HRA, HDC, HPD, NYPD, FDNY** along with the **non-profit** organizations contracted with the **City Defendants** and any employee, agent, officer or servant known and unknown to plaintiff during the incidents leading up to the injury, be collectively and in concert, held accountable for violating plaintiff's First, Ninth, and Fourteenth Amendment Rights to the United States Constitution and plaintiff's rights under the New York State Constitution and State Common Law in the manners alleged herein, enforcing a discriminatory policy that excludes certain class of citizens from enjoying the equal benefits of affordable Housing in communities that the policy deliberately allows for criminalizing the Homeless, including the plaintiff thought a community preference policy that permits developers to discriminate on the basis of class, status and/or income in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and New York State Constitution.

3) A mandatory injunction requiring that defendant(s) possessing any **information of arrest or diagnoses under the Mental Hygiene Law** arising from the actions complained of herein shall collect and deliver to the plaintiff all such records and expunge or delete all such information, reference and/or notation from their records;

4) An injunction enjoining Defendant(s) collectively from engaging in conduct to unlawfully disrupt, disperse, interfere with or prevent the lawful First Amendment activities explained herein and prohibiting the defendant(s) **non-profit Corporations** named herein, their employees, agents, officers or servants from enforcing **NYPD Patrol Guide 221** (Formerly 216) against plaintiff and the vulnerable Homeless community without the basis of probable cause, and to cease in maintaining the **City of New York Rules of Client Code of Conduct** exclusively the authority of the **City of New York** from being posted in their private not-for-profit corporations and intentionally enforced by the private non-profits and for profit security corporations that otherwise encourages, permits, and suborns the private actors to enforce against the plaintiff unless alternative means of enforcement are established to

prohibit the unlawful enforcement of such policy intended to criminalize and wrongfully imprison plaintiff and those similarly situated;

5)  Award plaintiff compensatory damages in the amount of $250,000.00 for each of the underlying claims that arose that resulted in the **wrongful imprisonments, excessive force and wrongful use of EDP Policy** intended to punish and retaliate and the cruel and barbaric treatment plaintiff was subjected to because defendants actins herein complained of as part of a conspiracy to deprive plaintiff of his rights, including but not limited to any emotional distress, and any other compensatory damages as permitted by law and according to trial;

6)  Award plaintiff **Victor M. Herrera punitive damages**;

7)  Award cost of suit pursuant to 42 USC §1920 and 1988, and

8)  Award Attorney Fees pursuant to 42 USC §1988;

9)  Award such other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interest of justice.

Dated: **July 17, 2018**                               **Respectfully submitted,**


*Victor M. Herrera*
_____
**Victor M Herrera**
            **Plaintiff Pro se**


**V E R I F I C A T I O N**

**I, Victor M Herrera** declare under the penalty of perjury that:

I am the plaintiff/claimant in the above entitled action and **Verified Complaint**, appearing Pro se. That I have read the contents thereof and know the contents therein; That the same is true to my own knowledge and belief, except as to matters stated to be alleged upon information and belief, and that as to those matters I believe them to be true.


*Victor M. Herrera*
_____
**Victor M Herrera**
            **Plaintiff Pro se**
**794 Snediker Ave, Apt 2F**
**Brooklyn, New York 11207**
**E.** Victorherrera93@gmail.com
**T. 347.932.2005**